FILED

MAY 1 2 2011

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

BELINDA E. RICHARD,                                    Civ. No. 09-123-AC

                Plaintiff,                               AMENDED
                                                       FINDINGS AND
      v.                                          RECOMMENDATION

DEUTSCHE BANK NATIONAL TRUST
COMPANY, a Delaware corporation,
REGIONAL TRUSTEE SERVICES
CORPORATION, a Washington State
corporation, BARCLAYS CAPITAL REAL
ESTATE, a Delaware corporation dba
HomEq Servicing,

                Defendant.

---

ACOSTA, Magistrate Judge:

*Introduction*[1]

    These motions concern a nonjudicial foreclosure of Plaintiff Belinda E. Richard's

---

    [1] This Findings and Recommendation is amended for the sole purpose of correcting a statement on page 17 which incorrectly stated that the notice of foreclosure was valid.

FINDINGS AND RECOMMENDATION     1               {KPR}

("Richard") residence by Defendants Deutsche Bank National Trust Company ("Deutsche Bank"),

Regional Trustee Services Corporation ("Regional Trustee Services"), and Barclays Capital Real

Estate, Inc., dba HomEq Servicing ("HomEq") (collectively "Defendants"). Richard alleges that the

foreclosure was improper on a number of grounds and moves for partial summary judgment for

declaratory relief that, at the time of foreclosure, her mortgage was not in default. Defendants move

for summary judgment on all claims, all of which revolve around the validity of the default and

foreclosure on Richard's property.

*Factual Background*

The factual basis of this motion is not disputed. On June 9, 2005, Richard executed a note

on the property located at 3711 Northwest Banff Drive, Portland, Oregon, 97229 ("the subject

property"), in the amount of $345,000, payable to the lender, Meritage Mortgage Corporation

("Meritage"). (HomEq Declaration ("Decl."), Exhibit ("Ex.") A at 1.) That same day, Richard

executed a Deed of Trust ("the trust deed" or "deed of trust") naming Mortgage Electronic

Registration Systems, Inc. ("MERS") beneficiary of the trust deed as Meritage's nominee and

naming as trustee Stewart Title. (HomEq Decl., Ex. B at 1-2.) HomEq began servicing Richard's

loan on September 8, 2005, and continued to service the loan through foreclosure. (Defendants'

Concise Statement of Material Facts ("Defs.' CSMF") ¶ 2.)

On May 11, 2007, MERS assigned its beneficial interest in the trust deed to Deutsche Bank,

and this assignment was recorded on May 21, 2007. (HomEq Decl., Ex. C at 1.) Also on May 11,

2007, Deutsche Bank appointed Regional Trustee Services as the successor trustee to Stewart Title,

which appointment was also recorded on May 21, 2007. (HomEq Decl., Ex. D at 1.)

The following spring, Richard became delinquent on her loan payments. She was informed

of her delinquency by HomEq, in a letter dated March 4, 2008. (HomEq Decl., Ex. E at 1.)  At that time, the amount of delinquency was $6,835.96.  *Id.*  The letter stated that, if the delinquency was not timely paid, HomEq would be entitled to take action including acceleration of the maturity date of the loan and declaring the loan "immediately due and payable" in full.  *Id.*  The letter cautioned: "In order to avoid further action, your full and timely payment in an amount sufficient to bring the Account current must be received by HomEq via **certified funds, cashier's check or money order(s)** on or before" April 8, 2008.  *Id.*  The letter included information from HomEq's Loss Mitigation department.  The Loss Mitigation department followed up with a letter to Richard dated March 25, 2008, offering to assist her in initiating a short sale of the subject property.  (HomEq Decl., Ex. F at 1.)

After Richard failed to cure her delinquency and default, Regional Trustee Services "recorded a Notice of Default and Election to Sell on April 14, 2008." (Defs.' CSMF ¶ 7.)  HomEq followed up with two letters to Richard dated April 15, 2008, both of which advised her that her account had been referred to the Foreclosure Department and that she may be eligible for a "workout" that would avoid foreclosure. (HomEq Decl., Ex. G at 1-2.) Regional Trustee Services sent a letter to Richard, dated April 17, 2008, informing Richard of her delinquency and the resulting Trustee's Notice of Sale. (Defs.' CSMF ¶ 8.)  This notice was otherwise published on four separate occasions.  *Id.* at ¶ 9.  And, over the next three months, HomEq continued to send notices to Richard of the pending foreclosure sale. (HomEq Decl., Ex. G at 3-6.)

The foreclosure was suspended, however, when the parties entered into a forbearance agreement, wherein Richard "promised to make monthly payments on the mortgage in the amount of $3,342.80 by certified funds beginning on April 8, 2008." (Defs.' CSMF ¶ 11.) The forbearance

agreement provided that "[a]ll money paid to HomEq during the term of this Agreement must be in certified funds (i.e., money order, bank cashier, check, etc.)[.]" (HomEq Decl., Ex. H at 5.) Richard successfully submitted the first two payments by wire transfer, which payments were accepted by HomEq. (Defs.' CSMF ¶ 12.) The third payment, which Richard made by electronic funds transfer ("EFT"), was rejected by HomEq as improperly submitted pursuant to the terms of the forbearance agreement.  Richard failed to take action to submit the payment by a method that satisfied HomEq; HomEq informed Regional Trustee Service, which in turn resumed the foreclosure proceedings and sold the subject property "at trustee's sale on November 17, 2008[,] to Deutsche Bank for $358,370.65." (Defs.' CSMF ¶ 16.)

On February 10, 2009, Deutsche Bank assigned its beneficial interest in the trust deed to "Deutsche Bank National Trust Company as Trustee under Pooling and Servicing Agreement Dated as of November 1, 2005 Morgan Stanley Home Equity Loan Trust 2005-4 Mortgage Pass Through Certificates, Series 2005-4" (hereinafter "Morgan Stanley").  (HomEq Decl., Ex. L.)  This assignment was recorded on February 23, 2009. *Id.*

### *Legal Standard*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2011). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts

FINDINGS AND RECOMMENDATION          4                                    {KPR}

which show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. The nonmoving party must set forth "specific facts showing a *genuine* issue for trial." FED. R. CIV. P. 56(e) (2008) (emphasis added). The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

## Discussion

Richard asserts a variety of claims and seeks declaratory judgment on several grounds, which are essentially: (1) whether MERS was authorized to act as nominee for the trust beneficiary; (2)

whether Richard defaulted on the trust deed; (3) whether the appointment of a successor trustee was valid; and (4) whether foreclosure of the subject property was lawful. This section will also address less central claims asserted by Richard.

I.    MERS as Beneficiary under the Deed of Trust

Courts are currently grappling with the nature and effect of MERS on the residential property transactions to which MERS has been a party. This chiefly stems from the fact that MERS acts in a specific and previously uncontemplated way, both as "nominee" for the beneficiary of a trust deed and as an electronic registration system. Although consensus is emerging on certain issues, there remains some uncertainty about MERS's substantive role in residential property transactions and its legal status for that purpose.

In this case, Richard asserts that, under the Oregon Trust Deed Act ("the Act"), MERS cannot serve as beneficiary of the deed of trust and, accordingly, cannot execute an assignment of such deed or initiate a non-judicial foreclosure on the deed. Defendants respond that the trust deed grants MERS, as the nominee of the actual beneficiary to the trust deed, the authority to act as beneficiary, which authority includes the authority to foreclose.

The function of MERS was concisely explained by District Judge Hogan of this court:

> Mortgage lenders, banks, insurance companies, and title companies become members of MERS and pay an annual fee. They appoint MERS as their agent to act on all mortgages that they register on the system. A MERS mortgage is recorded with the particular county's office of the recorder with 'Mortgage Electronic Registration System, Inc.' named as the lender's nominee or mortgagee of record on the mortgage. The MERS member who owns the beneficial interest may assign those beneficial ownership rights or servicing rights to another MERS member. These assignments are not part of the public record, but are tracked electronically on MERS's private records. Mortgagors are notified of transfers of servicing rights, but not of transfers of beneficial ownership.

*Burgett v. Mortgage Electronic Registration Systems, Inc.*, No. 09-6244-HO, 2010 WL 4282105, at *2 (D. Or. Oct. 20, 2010) (quoting Gerald Korngold, *Legal and Policy Choices in the Aftermath of the Subprime and Mortgage Financing Crisis*, 60 S.C. L. Rev. 727, 741-42 (2009)). Thus, as a result of MERS's unrecorded assignments, the actual beneficiary under a deed of trust is often unknown. Courts in this district and circuit appear to be in agreement that this practice may run afoul of foreclosure statutes' requirements.

Here, Richard relies on the Oregon Trust Deed Act. She argues that the trust deed is not in compliance with the Act because MERS is not a genuine beneficiary for which the trust deed secures an obligation. ORS 86.705(1) defines a beneficiary as: "the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or the person's successor in interest, and who shall not be the trustee unless the beneficiary is qualified to be a trustee under ORS 86.790(1)(d)." OR. REV. STAT. 86.705(1) (2009). The Act also provides that nonjudicial foreclosure is permitted where, among other things, "[t]he trust deed, any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee are recorded in the mortgage records in the counties in which the property described in the deed is situated[.]" OR. REV. STAT. 86.735(1) (2009). Thus, where all assignments have not been recorded, nonjudicial foreclosure is not permitted. It follows, however, and other courts in this district have recognized, that "the problem with the nonjudicial foreclosure proceeding was not MERS' involvement in the foreclosure *per se*; rather, it was the failure of the foreclosing parties to record all necessary assignments as required for a nonjudicial foreclosure under Oregon law." *Bertrand v. Suntrust Mortgage, Inc.*, Civil No. 09-857-JO, 2011 U.S. Dist. LEXIS 31442, at (D. Or. Mar. 23, 2011).

Courts in other districts in the Ninth Circuit have additionally recognized that MERS may

FINDINGS AND RECOMMENDATION        7                                    {KPR}

be the legal holder of a trust deed and that, where the foreclosure is otherwise lawful, a trust deed may authorize MERS, as nominee beneficiary, to foreclose on the property in question. *See Moon v. GMAC Mortgage Corp.*, C08-969Z, 2010 U.S. Dist. LEXIS 90912, at \*15 (W.D. Wash. Oct. 24, 2008) ("Simply because MERS registers documents in a database does not prove that MERS cannot be the legal holder of an instrument."); *see Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1190 (N.D. Cal. 2009) ("However, courts have been clear to allow MERS to conduct the foreclosure process when granted the power of sale provision. Since Plaintiff granted MERS the right to foreclose in his contract, his argument that MERS cannot initiate foreclosure proceedings is meritless."). But where the trust deed does not so authorize, MERS may not exercise all powers of a beneficiary. *See In re Allman*, Bankruptcy Case No. 08-31282-elp7, 2010 Bankr. LEXIS 2887, at \*24, 26 (D. Or. Aug. 24, 2010) ("The trust deed makes clear that MERS is merely a nominee for the lender, and that the trust deed is for the benefit of the lender. . . . It is not in any real sense of the word, particularly as defined in ORS 86.705(1), the beneficiary of the trust deed.").

Some courts in this district have reserved judgment on MERS's role in foreclosures pending guidance from the courts of this state. *See Thomas v. OneWest Bank, FSB*, Civ. No. 10-6234-AA, 2011 U.S. Dist. LEXIS 24609, (D. Or. Mar. 10, 2011) (declining to dismiss plaintiff's claim pending the development of case law in this jurisdiction); *see Rinegard-Guirma v. Bank of America, N.A.*, Civil Case No. 10-1065-PK, 2010 U.S. Dist. LEXIS 107619, at (D. Or. Oct. 6, 2010) (noting conflicting authorities and declining to dismiss the plaintiff's claim "[a]bsent a decision from the Oregon Supreme Court or the Oregon Court of Appeals[.]").

In support of her position that MERS lacked authority to foreclose as only a titular beneficiary, Richard cites *In re Mitchell*, BK-S-07-16226-LBR, 2009 Bankr. LEXIS 876 (D. Nev.

Mar. 31, 2009), a case from the Bankruptcy Court for the District of Nevada.  In that case, MERS

sought to establish standing in the bankruptcy proceeding on the basis that MERS was authorized

to foreclose under the terms of the trust deed and that it may sue under the instrument as nominee

holder of the instrument as provided by the Uniform Commercial Code.  *Id.* at *9.  The court was

not persuaded that MERS had established standing, writing: "MERS does not have standing merely

because it is the alleged beneficiary under the deed of trust. It is not a beneficiary and, in any event,

the mere fact that an entity is a named beneficiary of a deed of trust is insufficient to enforce the

obligation." *Id.* at *10.  This court notes, however, that the terms of the trust deed in *In re Mitchell*

were very explicit in that, there, MERS was acting solely in an administrative capacity for the actual

beneficiaries and had no rights beyond those specified in the trust deed.  And, furthermore, unlike

the current action, *In re Mitchell* concerns MERS's standing in the bankruptcy context, rather than

the authority of MERS to initiate a nonjudicial foreclosure.  *See Labasan v. Countrywide Mortgage*

*Ventures, LLC*, Case No. 2:09-02315-KJD-LRL, 2010 U.S. Dist. LEXIS 100332, at *4-5 (D. Nev.

Sept. 20, 2010) (referring explicitly to *In re Mitchell*, stating "Plaintiffs ignore case law related to

MERS' standing to initiate non-judicial foreclosures and rel[y] on opinions narrowly tailored to

apply to standing requirements to bring a motion for relief from stay in bankruptcy court and on

extra-jurisdictional opinions about judicial foreclosure proceedings.").

　　　In the present case, the trust deed provides:  "MERS is a separate corporation that is acting

solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary**

**under this Security Instrument.**" (HomEq Decl., Ex. B at 2 (emphasis in original).)  Under the

heading "TRANSFER OF RIGHTS IN THE PROPERTY" the trust deed states: "The beneficiary

of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and

assigns) and the successors and assigns of MERS." (HomEq Decl., Ex. B at 3.) The trust deed continues:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

*Id.* Thus, the deed of trust in question is explicit in authorizing MERS to act as a true beneficiary and, specifically, to foreclose on the subject property. This is not a case where the trust deed makes clear that MERS may act only in the capacity of a nominee. For these reasons, the court concludes that MERS's role as nominee beneficiary was lawful and gives legal effect to its actions consistent with that role.

II.    Default on the Trust Deed

Richard asserts that the foreclosure was improper because she was not in default at the time of foreclosure. Defendants argue that Richard was in default because she failed to make a payment consistent with the terms of the operative agreement. The parties dispute whether, at the time Defendants reinitiated foreclosure, Richard had defaulted on the terms of the forbearance agreement by failing to make timely payments by way of "certified funds."

The "Listing Forbearance Agreement" stated that "[a]ll money paid to HomEq during the terms of this Agreement must be in certified funds (i.e., money order, bank cashier, check, etc.)[.]" (HomEq Response Decl., Ex. D at 5.) A letter accompanying the forbearance agreement also stated: "Additionally, please note that *all payments made under the Agreement must be in certified funds*," and identified certified funds as "i.e. cashiers check, bank check, or money order[.]" *Id.* at 1

(emphasis in original).  The letter gave two additional options for payment, specifically payments sent via Western Union Quick Collect and bank wires.  *Id.* at 1-2.

In August 2008, Richard began making payments consistent with the forbearance agreement. The first two payments, in August and September 2008, were made via bank wire and were accepted by HomEq. (Richard Decl. ¶ 6.) Richard made her third payment through her bank's online bill pay service.  This payment was initially debited from her account, but was later returned and credited to her account.  (Richard Decl. ¶ 7-8.)

Defendants argue that both the forbearance agreement and its cover letter make clear that payments must be made with certified funds.  Defendants claim that Richard understood this requirement and knew how to fulfill it, as evidenced by the fact that she made her first two payments with certified funds.  Defendants object to Richard's characterization of the language in the forbearance agreement as "ambiguous," arguing that use of the term "etc." clearly refers to other types of certified funds not specifically listed.  Finally, Defendants argue that the meaning of the nonexclusive list of types of certified funds on the forbearance agreement can be clarified by removing the comma between "bank cashier" and "check."

Richard argues that the language regarding certified funds was ambiguous and should thus be construed against the drafter of the contract language, here Defendants.  In particular, Richard notes the use of "etc." which indicates that the list is not exclusive and thus renders it ambiguous, as well as the error in the language of the forbearance agreement, which purports to permit payment by certified funds in the form of a "bank cashier" and a "check."  Because of this ambiguity, Richard maintains that HomEq should have accepted a transfer from one bank to another, where the bank making the transfer will only do so if the account is sufficiently funded. Richard argues that use of

"etc." made the list of permissible payment methods nonexclusive and notes that HomEq did not explicitly exclude EFTs, though it could have.  Richard also points out that, under the trust deed, EFTs were permitted methods of payment.

Richard also cites the testimony of Defendants' corporate designee, Jodie Jarrell ("Jarrell"), a "research specialist in the litigation department for HomEq." (Jarrell Deposition ("Depo.") 6:20-21.) Jarrell testified that, with respect to the language of the forbearance agreement, that she did not know what "bank cashier" or "check" meant, but that "check" likely referred to a money order, a form of certified funds. (Jarrell Depo. 22:5-23:2.)  As to "etc.", she testified that she "[could not] speak to" what it meant, but explained:  "I agree with you that this is not clearly spelled out because I can't tell you what et cetera means; however, the borrower is instructed that they need to send certified funds and Ms. Richard knew that because she sent the first two payments by certified funds." (Jarrell Depo. 23:6, 13-18.)  Richard argues that if HomEq's own designee does not know what the certified funds provisions mean, Richard herself cannot be expected to properly interpret them.  Defendants argue that, Jarrell's testimony notwithstanding, the meaning of the terms is reasonably clear and, in any event, Richard was given multiple opportunities to cure her defective payment and chose not to do so.  Defendants also argue that Richard, who has professional experience in the real estate market, should have known what certified funds were.  Finally, in discussing the difference between a wire transfer and an EFT, Jarrell stated that an EFT was not considered certified funds by HomEq.  (Jarrell Depo. 30:10-15.)

The forbearance agreement explicitly calls for payment in certified funds and Richard was obligated to comply with the terms of this agreement.  That payments via EFT were accepted under the deed of trust is irrelevant to interpreting the phrase "certified funds" under the forbearance

agreement.  The question remains whether the forbearance agreement is sufficiently ambiguous in

defining "certified funds" to excuse Richard's failure to pay in conformity with the agreement.  The

court concludes that it is not.

> In Oregon, courts performing contract interpretation follow three steps:
>
> First, they examine the text of the disputed provision, in the context of the document as a whole.  If the provision is clear, the analysis ends.  However, if the contractual provision at issue is ambiguous, Oregon courts follow the second step of examining extrinsic evidence of the contracting parties' intent.  If the second step fails to resolve the ambiguity, Oregon courts rely on appropriate maxims of construction.

*Wicker v. Ebner*, 543 F.3d 1168, 1174 (9th Cir. 2008) (internal quotation marks and citations

omitted).  A contract term is deemed ambiguous "if [it is] susceptible to more than one reasonable

interpretation."  *Fogg v. Wart*, 2006 U.S. Dist. LEXIS 90583, at *15 (D. Or. Dec. 14, 2006) (citing

*Nixon v. Cascade Health Services, Inc.*, 205 Or. App. 232, 238, 134 P.3d 1027 (2006)).  If the term

is ambiguous and application of steps two and three does not resolve that ambiguity, the meaning

of the term in question is a question of fact for the finder of fact.  *Yogman v. Parrott*, 325 Or. 358,

363, 937 P.2d 1019 (1997) (*en banc*).

The court first looks to the content of the forbearance agreement itself.  It states, under the

heading "Certified Funds," that:  "All money paid to HomEq during the terms of this Agreement

must be in certified funds (i.e., money order, bank cashier, check, etc.)[.]"  (HomEq Decl., Ex. H at

5.)  This statement makes clear that payments must be made in certified funds.  The accompanying

parenthetical purports to give examples of certified funds but, as Defendants admit, gives examples

that are misleading or erroneous.  The phrase "bank cashier" does not refer to a method of payment

in certified funds.  The reference to a "check" as a form of certified payment is misleading because

not all types of checks qualify as certified funds; for example, a personal check is not payment in

certified funds. Defendants argue that the comma between "cashier" and "check" is clearly a mistake and that Richard would have known that.

Although the court need not resort to extrinsic evidence to resolve this issue, it notes that the cover letter provides additional support for Defendants' contention that the requirement for certified funds was clear. The cover letter to the forbearance agreement also refers to the requirement that payment be made in certified funds. It reads: "Additionally, please note that *all payments made under the Agreement must be in certified funds*[,]" and, later, "Certified funds (i.e. cashiers check, bank check, or money order) may be sent by overnight mail/courier service to insure delivery prior to the due date." (HomEq Decl., Ex. H at 1.) Again, the requirement is clear that payment must be made in certified funds and, here, the items in the parenthetical are not demonstrably erroneous.

In the court's view, the provision in the forbearance agreement requiring payment by certified funds suffers from the identified flaws, but is nonetheless unambiguous in its requirement that only certified funds are accepted as payment. It bears noting, though is not necessarily determinative, that Richard did not attempt to pay under the forbearance agreement by way of a "bank cashier" or a type of "check" that does not qualify as certified funds. Rather, Richards paid in a manner not contemplated by the forbearance agreement, an EFT.

Richard makes much of the fact that the parenthetical includes the term "etc." and of Jarrell's testimony that she does not know what "etc." means in that context. In the court's view, however, it is clear that the "etc." indicates that the items in the parenthetical are a nonexclusive list of methods of payment by certified funds and that other methods of payment by certified funds not listed are also acceptable. That the list is nonexclusive does not mean that it allows for payment in something other than certified funds.

Because the forbearance agreement clearly called for payment in certified funds and Richard failed to tender such payment, she was rightly placed in default and Defendants were entitled to foreclose.

III.    Appointment of Regional Trustee Services as Successor Trustee

On May 11, 2007, MERS as nominee for the beneficiary assigned all beneficial interest in the trust deed to Deutsche Bank, which assignment was recorded on May 21, 2007. Deutsche Bank also recorded an Appointment of Successor Trustee on that same day, May 21, 2007, appointing Regional Trustee Services as its successor trustee by way of "Fidelity National Foreclosure & Bankruptcy Solutions as Attorney-in-Fact for Barclays Capital Real Estate, Inc. dba HomEq Servicing."

Richard contends that the appointment was not valid. She argues that the appointment of Regional Trustee Services as successor trustee was invalid as it was not signed by Deutsche Bank, but rather the "attorney-in-fact" for Barclays Capital Real Estate, Inc. dba HomEq Servicing ("Barclays"). Richard objects to this because there is no evidence of the power of attorney relied upon and, even if the power of attorney was valid, it was on behalf of Barclays rather than Deutsche Bank, and conferred no authority to act for Deutsche Bank.

Defendants respond that Richard failed to give a statutory basis for her argument that an agent or attorney-in-fact for a lender may not sign an appointment, that a limited power of attorney did in fact exist, and, even if it did not, that this was a common industry practice and uniformly accepted.

Under Oregon law, appointment of a successor trustee by the trust's beneficiary may occur at any time after the execution of a trust deed and this appointment must be in writing. OR. REV.

STAT. 86.790(3) (2009). So long as this appointment is properly recorded, the successor trustee is "vested with all of the powers of the original trustee." *Id.*

Here, it is not apparent that the document purporting to appoint the successor trustee was executed by the beneficiary, as required under Oregon law. As a general matter, an appointment of a successor purported to be made by the beneficiary to a trust deed is not valid where the beneficiary is not actually a party to the appointment, as recorded, and where the granting of such appointment is made by an agent of a party not actually the beneficiary. Here, MERS, acting as nominee for the beneficiary to the trust deed, assigned the beneficial interest to Deutsche Bank, the same day a successor trustee to Stewart Title was purported to have been appointed, but this appointment was undertaken by an agent of HomEq, the loan servicer. Defendants object that Richard has not given a statutory basis for her allegation but, similarly, Defendants have failed to provide that a nontraditional transfer such as this is legitimate under the law. In fact, the Act requires that the appointment be made by the beneficiary. Defendants' contention that this was a commonplace practice in the industry is not well taken – industry practice cannot supplant the requirements the law imposes. Recording practices not consistent with the law are not made legal or legitimate simply because those in the industry chose to accept them in lieu of practices that conformed to the law.

Defendants have failed to establish that the appointment of Regional Trustee Services was valid and the court holds that the appointment does not have legal effect.

IV.    Foreclosure

In light of the fact that the appointment of Regional Trustee Services as successor trustee was not valid, the foreclosure that it noticed and conducted was not lawful. But, even if the appointment had been valid, the foreclosure would still not be lawful for failure to record all assignments prior

FINDINGS AND RECOMMENDATION        16        {KPR}

to foreclosure and for failure to adequately notice the foreclosure sale.

A.      *Recording of Assignments*

Under Oregon law: "[t]he trustee may foreclose a trust deed by advertisement and sale in the manner provided in ORS 86.740 to 86.755 if . . . [t]he trust deed, any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee are recorded in the mortgage records in the counties in which the property described in the deed is situated[.]" OR. REV. STAT. 86.735 (2009).   Thus, a foreclosure may take place so long as any assignment by the beneficiary or the trustee has been recorded.

Here, the first assignment from MERS to Deutsche Bank was recorded in May 2007, well before the notices of default and sale.   A second assignment was recorded subsequent to the foreclosure sale, but the record evidence implies that the assignment actually took place prior to the foreclosure sale and was, thus, an unrecorded assignment at the time of sale.   As Richard points out, an activity log kept by HomEq states, on the date of the foreclosure sale:   "NO BIDDERS, PROPERTY REVERTED BACK TO BENEFICIARY" and identifies the beneficiary as Morgan Stanley. (HomEq Decl., Ex. K at 12.) Furthermore, if the unrecorded assignment did not take place prior to foreclosure sale, it would be irrational to record an assignment of the interest after the fact, where the interest was appropriately conveyed upon purchase of the subject property.   Thus, the court concludes, Morgan Stanley was the beneficiary at the time of the foreclosure sale, which means that the second unrecorded assignment had taken place prior to sale, but was recorded subsequent to sale. Defendants do not dispute this premise in their briefing, though they argue that their failure to record this assignment prior to sale was irrelevant.

Defendants claim that this assignment is not covered by ORS 86.735 because the statute does

not state that "all" assignments must be recorded.   In particular, Defendants argue that the assignment in question does not fall under the statute because it was not the type of assignment contemplated by the statute.   Rather, as Defendants argued more explicitly at oral argument, it was not an assignment of the trust deed itself, but rather an assignment of the underlying interest.

The court does not agree that the statute operates in the manner advanced by Defendants. The court turns, again, to the opinion in *Burgett v. Mortgage Electronic Registration Systems, Inc.* In *Burgett*, Judge Hogan cited a letter opinion authored by Judge Breithaupt of the Oregon Tax Court, wherein Judge Breithaupt addresses the issue of unrecorded assignments and MERS.   The letter opinion first explains that unrecorded assignments are permissible under the Act:  "'The trust deed statutes therefore clearly contemplate that assignments of the beneficial interests in obligations and security rights will occur and may, in fact, not have been recorded prior to foreclosure.'" *Burgett*, 2010 U.S. Dist Lexis 112286, at *7.   Judge Breithaupt goes on to clarify the reach of the statute in that "the foreclosure statute specifically contemplates 'any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee must be recorded.'" *Id.* at *8.   On this analysis, Judge Hogan then concluded that this statute extends to "the subsequent lenders/servicers [that] are also beneficiaries as holders of the beneficial interest[,]" and assignments to which must also be recorded prior to foreclosure sale. *Id.* at *8-9.

Here, at the time of the foreclosure sale, the second assignment had taken place but had not been recorded as required under ORS 86.735.  Thus, the trustee was not permitted to foreclose the trust deed.  The foreclosure should be deemed invalid.

B.      *Notice of Foreclosure*

Richard contends that she did not receive proper notice of the foreclosure sale of her property

following the termination of the forbearance agreement.  Defendants argue that the forbearance agreement provided that no additional notice of foreclosure was required upon default on the forbearance agreement.  Defendants further argue that, in any event, they complied with the statutory requirements to lawfully postpone a foreclosure sale.

Here, the foreclosure sale was originally noticed on April 30, 2008, and then again on three additional occasions, the last of which occurred on May 21, 2008.  The last notice provided that the sale was scheduled for August 18, 2008.  On August 8, 2008, shortly before the foreclosure was set to take place, the parties entered into the forbearance agreement.  This agreement stated that

> for the term of this Agreement, foreclosure proceedings shall be held in abeyance so long as Borrower complies with all terms of this Agreement.  Nothing in this paragraph shall prevent HomEq from taking any and all action necessary to maintain the status of the foreclosure action in its present state or to advance the action to prevent its dismissal.

(HomEq Decl., Ex. H at 2.)  Furthermore, the foreclosure agreement provided that HomEq "ha[d] the right to post the Property for foreclosure without the necessity of mailing another demand/notice of intent to accelerate and to take all steps necessary for foreclosure in the event Borrower defaults under the terms of this Agreement." *Id.* at 2-3.

Richard's third payment under the forbearance agreement was rejected, and she was deemed in breach of the forbearance agreement, on or around October 7, 2008.  An affidavit of service reveals that, on October 17, 2008, a foreclosure sale set for that date was publicly postponed until November 17, 2008.  (Defs.' Reply, Ex. 1.)  The foreclosure sale then occurred on November 17, 2008, as scheduled.  (Defs.' Reply, Ex. 2.)

Oregon law requires that a grantor to a residential trust deed be given notice of a foreclosure sale of their residential property, including the time and location at which the property will be sold.

FINDINGS AND RECOMMENDATION          19                              {KPR}

OR. REV. STAT. 86.737 (2009).  Oregon law also provides that a foreclosure sale may be postponed "for one or more periods totaling not more than 180 days from the original sale date, giving notice of each adjournment by public proclamation made at the time and place set for sale."  OR. REV. STAT. 86.755 (2009).  The statute also requires that a public proclamation of such postponement must be made at the time and place scheduled for the foreclosure sale.  Defendants argue that they complied with the statutory duty to notice Richard but that, even if they did not, the forbearance agreement relieved them of this duty because it allowed Defendants to reinitiate foreclosure without additional notice.

The court is not persuaded that Defendants complied with their statutory duty to give notice to Richard of the foreclosure sale of the subject property.  The sale was originally scheduled for August 18, 2008.  This sale never took place because the parties entered into the forbearance agreement, which placed the foreclosure sale in abeyance.  When Richard defaulted on the forbearance agreement, on or around October 7, 2008, the foreclosure sale was scheduled for October 17, 2008.  There is no evidence in the record that Richard received any notice of the October 17, 2008, sale at which the postponement was publicly cried and the November 17, 2008, sale was noticed.  Although the forbearance agreement permits Defendants to reinitiate foreclosure without re-noticing a demand or notice to accelerate, it does not explicitly permit Defendants to conduct a foreclosure sale without informing Richard of its time and place consistent with Oregon law.

Based on the record before it, the court concludes that Defendants failed to properly notice the foreclosure sale, and the foreclosure was wrongful for this additional reason.

## V.   Claim to Quiet Title

Richard alleges that the trust deed and other documents "recorded against Plaintiff's title"

unlawfully cloud her title. (Compl. ¶ 31.) In other words, Richard asserts an action to quiet title and seeks a declaratory judgment of same.  An action to quiet title is "[a] proceeding to establish a plaintiff's title to land by compelling the adverse claimant to establish a claim or be forever estopped from asserting it."  BLACKS LAW DICTIONARY 34 (9th Ed. 2009).

Richard does not provide a basis upon which the court should conclude that she is entitled to clear title to the subject property.  Rather, because the record shows that Richard was legitimately in default and failed to meet the obligations of the forbearance agreement, it is clear that she is not so entitled.  The fact that Defendants failed to properly record and foreclose does not advance Richard's claim to clear title.  Defendants' motion on this claim should be granted.

VI.    Wrongful Foreclosure

Richard alleges that Defendants' wrongfully foreclosed on her property.  Having determined that the foreclosure was invalid, the court should deny Defendants' motion for summary judgment on this claim.

*Conclusion*

For the reasons stated, Richard's motion for summary judgment (#43) seeking declaratory relief that her account was not in default should be denied.  Defendants' motion for summary judgment (#35) should be granted, with respect to Richard's requests for declaratory relief, because MERS should be found to have lawfully acted as beneficiary and Richard should be found in default. Defendants' motion for summary judgment should be denied, with respect to Richard's requests for declaratory relief, because the court should hold that the appointment of the successor trustee was not valid, and that the foreclosure sale is void for failure to record all interests prior to foreclosure as well as failure to adequately notice the foreclosure sale.  Defendants' motion for summary

judgment should be granted as to Richard's claim to quiet title and denied as to Richard's claim for wrongful foreclosure.

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due May 26, 2011. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 12th day of May, 2011.

JOHN V. ACOSTA
United States Magistrate Judge