# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **BELINDA E. RICHARD**, | Case No.: 3:09-cv-00123-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **DEUTSCHE BANK NATIONAL TRUST COMPANY**, a Delaware corporation, **REGIONAL TRUSTEE SERVICES CORPORATION**, a Washington State corporation, and **BARCLAYS CAPITAL REAL ESTATE, INC.** dba **HOMEQ SERVICING**, a Delaware Corporation, | |
| Defendants. | |

Terrance J. Slominski
David W. Venables
SLOMINSKI & ASSOCIATES
7100 S.W. Hampton Street, Suite 101
Tigard, OR  97223

    Of Attorneys for Plaintiff

Bruce C. Hamlin
Michael J. Farrell
MARTIN, BISCHOFF, TEMPLETON, LANGSLET & HOFFMAN LLP
888 S.W. Fifth Avenue, Suite 900
Portland, OR  97204

    Of Attorneys for Defendants Deutsche Bank National Trust Company
    and Barclays Capital Real Estate

Lisa M. McMahon-Myhran
ROBINSON TAIT, P.S.
710 Second Avenue, Suite 710
Seattle, WA  98104

 Of Attorneys for Defendant Regional Trustee Services Corporation

**SIMON, District Judge**.

 On November 17, 2008, Defendant Regional Trustee Services Corporation ("Regional"), acting as a trustee under Oregon's Trust Deed Act ("OTDA"), Or. Rev. Stat. ("ORS") §§ 86.705 – 86.795, sold the home of Plaintiff Belinda E. Richard ("Plaintiff") at a non-judicial foreclosure sale. Plaintiff brought this action against Regional, as well as the beneficiary of her trust deed, Deutsche Bank National Trust Company ("Deutsche Bank"), and her loan servicer, Barclays Capital Real Estate, Inc. d/b/a HomEq Servicing ("HomEq"), seeking both a declaration that the foreclosure sale and trustee's deed are void and an award of damages.

 After a number of rulings were made, the case was transferred to this court. Dkt. 96. With leave of the court, the parties then filed the following motions: Deutsche Bank and HomEq move for summary judgment, Dkt. 107; Regional moves for reconsideration of the court's earlier decision denying Regional's motion for summary judgment, Dkt. 110; and Plaintiff moves for reconsideration of the court's earlier rulings and for partial summary judgment. Dkt. 115. For the reasons discussed below, Deutsche Bank and HomEq's motion for summary judgment is granted in part and denied in part; Regional's motion for reconsideration is granted and its motion for summary judgment is granted; and Plaintiff's motion for reconsideration and partial summary judgment is granted in part and denied in part.

/ / /

/ / /

Page 2 – OPINION AND ORDER

# BACKGROUND

On June 9, 2005, Plaintiff obtained a loan of $345,000 from Meritage Mortgage Corp. to purchase residential real property in Portland, Oregon. Plaintiff signed a note in favor of Meritage and a trust deed naming Mortgage Electronic Registration Systems ("MERS") as beneficiary. Dkt. 40-2, Exs. A-B. On May 21, 2007, MERS assigned the beneficial interest in the trust deed to Deutsche Bank. Dkt. 40-2, Ex. D. On the same day, Deutsche Bank appointed Regional as successor trustee. Dkt. 40-2, Ex. E.

Plaintiff became delinquent on the loan in February 2008. Dkt. 40-2, Ex. F. Regional recorded a notice of default on April 14, 2008. Dkt. 40-2, Ex. H. On August 8, 2008, Plaintiff and HomeEq entered into a "Forbearance Agreement." Under that agreement, Plaintiff agreed to make monthly payments of $3,342.89, beginning that day, for six months, and then a balloon payment of $24,328.08 on February 8, 2009. Dkt. 40-2, Ex. L. During the pendency of the Forbearance Agreement, Plaintiff was to attempt to sell the property while Defendants temporarily suspended foreclosure proceedings. Dkt. 40 ¶ 11.

According to the Forbearance Agreement:  "While Borrower remains obligated pursuant to the terms of the Loan to make regular monthly payments, foreclosure proceedings shall be held in abeyance for the term of this Agreement provided Borrower makes the forbearance payments as described above and all other terms of this Agreement have been satisfied." Dkt. 40-2, Ex. L. Term 14 of the Forbearance Agreement provides:  "Certified Funds: All money paid to HomEq during the term of this Agreement must be in certified funds (i.e., money order, bank cashier, check, [*sic*] etc.)" *Id.*

Plaintiff made her first two monthly payments under the Agreement, in August and September, by bank wire transfer, and HomeEq accepted both. Dkt. 44 ¶ 8; Dkt 36 ¶ 13. In

October 2008, Plaintiff sent her third payment by electronic funds transfer.[1] Dkt. 44 ¶ 9.

According to HomEq, Plaintiff's third payment was not sent by "certified funds." Dkt. 36 ¶ 14.

HomEq, therefore, rejected Plaintiff's third payment. Dkt. 40 ¶¶ 12-13; Dkt. 44 ¶ 11. According

to Defendants, Plaintiff's failure to pay by certified funds resulted "in the payment being rejected

and plaintiff ending up in default once again." Dkt. 40 ¶ 12. Regional then resumed the

foreclosure process and held a trustee's sale on November 17, 2008.

       Plaintiff filed this action in January 2009, asserting claims for: (1) declaratory relief

based on alleged violations of the OTDA and the Forbearance Agreement; (2) breach of the trust

deed and promissory note; (3) slander of title; (4) quiet title; and (5) wrongful foreclosure. The

parties briefed and argued summary judgment motions to Magistrate Judge John V. Acosta. In

her briefing, Plaintiff elected to abandon her claim for slander of title. Dkt. 58 at 13. After Judge

Acosta issued his findings and recommendations ("F&R") recommending that some of

Plaintiff's claims be dismissed, Dkt. 79, the parties filed objections to the F&R. District Judge

Marco Hernandez reviewed those objections and granted in part and denied in part Defendants'

motion for summary judgment with respect to the claim for declaratory relief. Judge Hernandez

also dismissed the quiet title claim, but let stand the claim for wrongful foreclosure. Judge

Hernandez did not address the breach of contract claim. Dkt. 90 ("Hernandez Op.").

       In September 2011, the case was transferred to this court. Dkt. 96. The court permitted

the parties to file new motions for summary judgment. Dkt. 97. The following motions are

currently before the court: Deutsche Bank and HomEq's motion for summary judgment,

---

[1] The parties refer to the method of payment used by Plaintiff in several ways. Plaintiff initially called it an "online payment." Dkt. 44 ¶ 9. In her memorandum in support of her motion for summary judgment and reconsideration, however, she refers to her method of payment as "electronic funds transfer." Dkt. 116 at 2. Defendants call it "CHECKFREE" or "Bill Pay." Dkt. 40 ¶ 12.

Dkt. 107; Regional's motion for reconsideration of the court's earlier ruling denying Regional's

motion for summary judgment, Dkt. 110; and Plaintiff's motion for reconsideration and partial

summary judgment, Dkt. 115.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). On a motion for summary judgment, the court must view the evidence in

the light most favorable to the non-movant and must draw all reasonable inferences in the non-

movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001).

"'Credibility determinations, the weighing of the evidence, and the drawing of legitimate

inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for

summary judgment.'" *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 871

(2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "Summary

judgment is not appropriate if a reasonable jury viewing the summary judgment record could

find by a preponderance of the evidence that the plaintiff is entitled to a verdict in his favor."

*Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

## DISCUSSION

The parties' motions raise six principal issues: (1) whether Plaintiff or HomEq breached

the Forbearance Agreement; (2) whether Deutsche Bank's appointment of Regional as successor

trustee was effective; (3) whether Regional lawfully noticed the foreclosure sale; (4) whether

there was an unrecorded assignment from Deutsche Bank to Morgan Stanley; (5) whether

Plaintiff has established a genuine dispute for trial on her claim for wrongful foreclosure; and (6)

whether emotional distress damages are available for breach of contract.

A.      **Forbearance Agreement**

Plaintiff contends that HomEq breached the Forbearance Agreement by foreclosing and

selling her home in November 2008. In order to prevail on a claim based on breach of contract

against HomEq, Plaintiff must "'plead and prove [her] own substantial performance'" of the

contract's terms. *Iron Horse Eng'g Co., Inc. v. Northwest Rubber Extruders, Inc.*, 193 Or. App.

402, 416 (2004) (quoting *Wasserburger v. American Sci. Chem.*, 267 Or. 77, 82 (1973)). HomEq

contends that Plaintiff cannot do this because she materially breached[2] the Forbearance

Agreement in October 2008, thereby relieving HomEq of its promise to forbear foreclosing.

According to HomEq, Plaintiff materially breached the Forbearance Agreement by sending her

third payment by electronic funds transfer ("EFT") rather than certified funds. Dkt. 124 at 6; *see*

*McPherson v. Dauenhauer*, 187 Or. App. 551, 560 (2003) ("a material breach entitles a [non-

breaching] party to rescind a contract"). Thus, to decide whether Plaintiff has a claim for breach

of contract against HomEq turns on whether Plaintiff materially breached the Forbearance

Agreement by sending her third payment by EFT rather than by certified funds.

Plaintiff makes two primary arguments in support of her contention that she did not

materially breach the Forbearance Agreement. First, Plaintiff argues that she did not breach the

Forbearance Agreement because the agreement permitted her to send payments by EFT.

Dkt. 116 at 1-2. This argument requires the court to interpret the Forbearance Agreement and

determine whether that agreement allowed Plaintiff to submit payments by EFT.[3] Dkt. 40-2,

---

[2]    "Substantial performance is the antithesis of material breach; if it is determined that a
breach is material . . . it follows that substantial performance has not been rendered." 15 R. Lord
WILLISTON ON CONTRACTS § 44:55 (4th ed. 2000).

[3]    The Forbearance Agreement contains a choice-of-law provision requiring application
of California law. A federal district court in a diversity case applies the choice-of-law rules of the
forum state. *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4 (1975). "Oregon courts *first*

Ex. L. "To construe a contractual provision, we first examine the text of the disputed provision in the context of the contract as a whole; if the provision is unambiguous, we construe it as a matter of law, and our analysis ends." *Sollars v. City of Milwaukie*, 222 Or. App. 384, 388 (2008).

The court finds that the Forbearance Agreement is unambiguous. Although that agreement lists several varieties of acceptable payment, and includes an "etc." at the end of the list, the agreement in all cases requires that the payment be made by *certified* funds.[4] An examination of the definition of "certified check" makes clear that "certified funds" means a payment method in which a third-party institution, rather than the payor, guarantees, or certifies, the availability of funds to the payee. "Certified check" means a "depositor's check drawn on a

---

look to whether there is a material difference between Oregon substantive law and the law of the other forum. If there is no material difference – if there is a 'false conflict' – Oregon law applies." *Angelini v. Delaney*, 156 Or. App. 293, 300 (1998) (emphasis in original); *see also CACV of Colorado, LLC v. Stevens*, --- Or. App. ---, 2012 WL 839259 (2012) (first determining whether there was material difference between Oregon and Delaware law, notwithstanding contract's choice-of-law provision). There is no material difference between California law and Oregon law regarding the interpretation of contracts and the determination of breach. *See Southern Cal. Edison Co. v. Superior Court*, 37 Cal. App. 4th 839, 847 (1995); *Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (2011). This court, therefore, applies Oregon law to interpret the Forbearance Agreement and determine whether Plaintiff materially breached it.

[4] Plaintiff argues that HomEq's deposition testimony proves that the Forbearance Agreement is ambiguous. Dkt. 116 at 5-6. HomEq's testimony that "I can't tell you what et cetera means," Dkt. 116 at 5, however, establishes only that HomEq was unsure what other forms of payment might be encompassed within the category of "certified funds." It does not demonstrate that the meaning of "certified funds" is ambiguous.

In addition, the meaning of "etc." in this context must be interpreted in light of the maxim *ejusdem generis*. Whatever methods of payment are included within the "etc." must in all cases be of the same kind as the methods listed before the "etc." *See United States v. Holmes*, 646 F.3d 659, 665 (9th Cir. 2011) ("*Ejusdem generis*, literally 'things of the same kind,' means merely that we determine the meaning of a general term by reference to the others in the list."). The other methods preceding "etc." are described as: "money order, bank cashier, check, etc." Defendants note that the comma between "cashier" and "check" is a typographical error. Dkt. 76 at 21; F&R at 11. The cover letter to the Forbearance Agreement lists "cashier[']s check, bank check, or money order" as examples of certified funds. Dkt. 40-2, Ex. L. Each of those methods involves a third-party guarantee.

bank that guarantees the availability of funds for the check." BLACK'S LAW DICTIONARY 269 (Bryan A. Garner ed. 2009). "Because the bank charges the drawer's account for the certified check amount at the time of certification, the bank *guarantees* the availability of the funds for the payee." *Imports, Etc., Ltd. v. ABF Freight System, Inc.*, 162 F.3d 528, 530 (8th Cir. 1998) (emphasis added). The same is true of cashier's checks; the bank, rather than the payor, guarantees to the payee the availability of funds. "The customer provides payment to the bank for the cashier's check at the time the bank issues the check. The bank therefore makes a guarantee to the payee for a cashier's check as well." *Id.* The Forbearance Agreement unambiguously required Plaintiff to make payments in a manner that involved a third-party guarantee to HomEq of the availability of funds.

An EFT, however, does not involve a guarantee of the availability of funds. According to the Electronic Fund Transfer Act, "electronic fund transfer" means "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." 15 U.S.C. § 1693a(7). This expansive definition does not include reference to the sort of guarantee that is the hallmark of a certified check or a cashier's check. In fact, the staff interpretation of the Electronic Fund Transfer Act, cited by Plaintiff, Dkt. 116 at 4, supports the conclusion that EFTs do not involve a third-party guarantee of the availability of funds. *See* 12 C.F.R. pt. 205, Supp. I § 3(b). Because the Forbearance Agreement is unambiguous, it is unnecessary to consider extrinsic evidence to ascertain the intent of the parties. Plaintiff did not comply with the terms of the Forbearance Agreement by submitting her third payment by EFT.

Plaintiff's second argument is that even if she did not comply with the literal terms of the Forbearance Agreement, she substantially performed her obligations under the Forbearance Agreement such that HomEq was not free to foreclose and sell her home. Dkt. 116 at 2. Only "a material breach entitles a party to rescind a contract." *McPherson*, 187 Or. App. at 560; s*ee also* RESTATEMENT (SECOND) OF CONTRACTS § 237 cmt. d (1981) ("The considerations in determining whether performance is substantial are those . . . for determining whether a failure is material."). "A breach is material if it goes to the substance of the contract and defeats the object of the parties' entering into the contract." *Commerce Mortgage Co. v. Indus. Park Co.*, 101 Or. App. 345, 349 (1990). Whether a breach is material is ordinarily a question of fact for the jury. *Wasserburger v. American Sci. Chem.*, 267 Or. 77, 82 (1973). A breach may be a matter of law, however, where "the uncontested evidence is consistent only with the idea of a material breach." *Commerce Mortgage Co.*, 101 Or. App. at 349.

The evidence here is not consistent "*only* with the idea of a material breach." According to the Forbearance Agreement, "Borrower [Plaintiff] has requested that HomEq enter into this Agreement to hold the foreclosure in abeyance, while attempting in good faith to make a quick and reasonable sale of said property." Dkt. 40-2, Ex. L. Although Plaintiff failed to comply with the literal requirements of the Forbearance Agreement, neither HomEq nor Deutsche Bank have established through uncontroverted evidence that Plaintiff's payment by EFT defeated the object of that agreement, which was to permit Plaintiff an opportunity to make a quick and reasonable sale of the property while timely making the agreed-upon payments to Defendants. Thus, whether Plaintiff materially breached the Forbearance Agreement – that is, whether she substantially performed her obligations under the agreement – raises a triable issue of fact.

Although Plaintiff has raised a triable issue of fact with respect to HomEq's alleged breach of the Forbearance Agreement, she has not established that the Forbearance Agreement cured her underlying default on the note and trust deed. The Forbearance Agreement expressly states that "Borrower remains obligated pursuant to the terms of the Loan to make regular monthly payments[.]" Dkt. 40-2, Ex. L. It also states that funds paid to HomEq during the term of the agreement "shall be first applied to amounts in arrears[.]" *Id.* According to the Notice of Default, Plaintiff missed three payments between February and April 2008 and was more than $10,000 in arrears. Dkt. 40-2, Ex. H. No provision of the Forbearance Agreement purports to forgive the amount Plaintiff owes or to cure her default. In fact, the Forbearance Agreement is *only* an agreement to postpone foreclosure while Plaintiff attempts to sell the property. Thus, notwithstanding whether it was Plaintiff or HomEq that materially breached the Forbearance Agreement, the court concludes that Plaintiff was in default on her loan at the time of the foreclosure. Plaintiff's breach of contract claim, which depends expressly on establishing that Plaintiff was not in default on the note and trust deed, is, therefore, dismissed.

Plaintiff's allegation that HomEq breached the Forbearance Agreement, however, is relevant to her claim for declaratory relief. In subsection (8) of that claim, Plaintiff alleges that "Regional was not entitled to foreclose the Deed of Trust because . . . Deutsche Bank through Barclays modified the terms of [the] loan and accepted payments under that modification requiring that the foreclosure be canceled." Compl. ¶ 20.8. The Forbearance Agreement did not cure Plaintiff's default under the note and trust deed, and did not modify the note and the trust deed. In the Forbearance Agreement, HomEq, on behalf of Deutsche Bank, merely and separately agreed that despite Plaintiff's default, it would not foreclose on Plaintiff's home during the term of the Forbearance Agreement. The court finds, therefore, that subsection (8) of

Plaintiff's claim for declaratory relief survives summary judgment to the extent that it claims that Defendants breached the Forbearance Agreement. The Forbearance Agreement is also relevant to Plaintiff's wrongful foreclosure claim, as will be discussed in greater detail below.

**B.      Appointment of Successor Trustee**

Plaintiff alleges that "Regional was not entitled to foreclose the Deed of Trust because its appointment as successor trustee is invalid having been signed by Fidelity National Foreclosures and Bankruptcy Solutions on behalf of Barclays, not on behalf of the recorded beneficiary under the Deed of Trust." Compl. ¶ 20.3. The Appointment of Successor Trustee states that Deutsche Bank "hereby appoints REGIONAL TRUSTEE SERVICES CORPORATION . . . as Successor Trustee under said trust deed[.]" *See* Dkt. 40-2, Ex. E. The signature block states: "Deutsche Bank National Trust Company as Trustee by FIDELITY NATIONAL FORECLOSURE & BANKRUPTCY SOLUTIONS as Attorney-in-Fact for BARCLAYS CAPITAL REAL ESTATE, INC. DBA HOMEQ SERVICING." In its motion for reconsideration and summary judgment, Regional contends that this appointment was valid because agents "have authority to properly sign documents of a principal." Dkt. 111 at 4. The court agrees with Regional.

The signature block indicates that Fidelity signed the Appointment of Successor Trustee on behalf of Deutsche Bank: The signature block states "Deutsche Bank National Trust Company as Trustee *by* Fidelity . . . as Attorney-in-Fact for . . . HomEq." (Emphasis added and capitalization omitted.) According to WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 307 (Philip B. Gove ed. 1993), "by" means, in part, "through the medium of (an indirect or subordinate agent)[.]" Thus, the "by" indicates that Deutsche Bank executed the document through the medium of Fidelity. Assuming appropriate authorization, this is legally permissible. An agent with authority to do so may perform any act permitted of a principal: "Generally, a

person may appoint an agent to do the same acts and to achieve the same legal consequences by the performance of an act as if he or she had acted personally." 3 Am. Jur. 2d Agency § 18 (2012).

Plaintiff, however, contends that Fidelity's signature is invalid because the document does not contain or include any evidence that Fidelity had authority to act on behalf of Deutsche Bank. Dkt. 125 at 2 (The Appointment of Successor Trustee "was not signed by Deutsche Bank, but by a supposed agent (Fidelity) of another supposed agent (HomEq), without evidence that either agency relationship existed."). Neither the OTDA nor Oregon agency law, however, require proof on the document itself that an agent is signing on behalf of its principal. In this case, Plaintiff alleges that there has been no such agency authority. It is Plaintiff's burden – not Defendants' – to prove that point.[5] "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010). In response to Regional's summary judgment motion, Plaintiff has failed to introduce any evidence showing a genuine dispute that Fidelity lacked the authority to execute the Appointment of Successor Trustee on behalf of Deutsche Bank.

In fact, the only evidence in the record concerning the scope of Fidelity's authority suggests that Fidelity had the necessary authority. First, Fidelity's signature of the Appointment of Successor Trustee as "Attorney-in-Fact" for HomEq is some evidence that Fidelity was acting as an agent for HomEq. Second, HomEq presented a declaration stating that it had authority to act as an agent for Deutsche Bank. Dkt. 36 ¶ 8. Thus, Defendants have presented evidence that

---

[5] Plaintiff has had an opportunity to take discovery in which to adduce evidence that Fidelity did not have the required agency authority. Further, Plaintiff has not requested more time, pursuant to Fed. R. Civ. P. 56(d), to take additional discovery on this issue.

HomEq had the authority to act as an agent for Deutsche Bank and Fidelity had the authority to act as an agent for HomEq. Thus Fidelity, albeit indirectly, could act as an agent for Deutsche Bank. Plaintiff has failed to establish a genuine dispute of fact to the contrary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) (one "of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses"). Plaintiff's claim that the Appointment of Successor Trustee was invalid is, therefore, dismissed.

## C.    Notice Requirements

Plaintiff alleges that "Regional was not entitled to foreclose the Deed of Trust because the sale was held on a date that was noticed improperly scheduled [*sic*] as required under ORS [§] 86.755." Compl. ¶ 20.9. Regional argues, however, that "the evidence before the court demonstrate[s] . . . full compliance with ORS [§] 86.755[.]" Dkt. 111 at 6.

ORS § 86.755(2) provides:

> The trustee or the attorney for the trustee, or an agent that the trustee or the attorney conducting the sale designates, may postpone the sale for one or more periods that total not more than 180 days from the original sale date, giving notice of each adjournment by public proclamation made at the time and place set for sale. The trustee, the attorney or an agent that the trustee or the attorney designates may make the proclamation.

Regional relies upon four affidavits that it contends establish that Regional properly postponed the sale by "public proclamation." *See* Dkt. 113-1, Ex. A-D. Plaintiff responds that the affidavits are defective and, therefore, "there is no competent evidence to support Regional's assertion that the postponements were publicly proclaimed." Dkt. 125 at 4.

During oral argument, Regional requested an opportunity to submit new declarations addressing the defects that Plaintiff identified. The court permitted Regional to submit new declarations. Transcript at 49-50. Regional then submitted two new declarations. Dkt. 140, 141.

Taken together, these declarations establish that agents of Regional appeared at the time and place set for the sale and publicly proclaimed that the sale was postponed.

Nevertheless, Plaintiff objects to these declarations by asserting that neither "identify[] the particular property that was being sold or what was actually said or proclaimed when the Declarant supposedly postponed the sale." Dkt. 143 at 3. Both declarations, however, state that the declarant "by public proclamation postponed the sale" of the "property that is the subject of this case." Plaintiff's contention that the declarations are not sufficiently specific does not raise a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). Regional properly postponed and then rescheduled the foreclosure sale.

**D.    Unrecorded Assignment**

Regional asks the court to reconsider the Magistrate Judge's finding that "Morgan Stanley was the beneficiary at the time of the foreclosure sale, which means that the second unrecorded assignment had taken place prior to sale, but was recorded subsequent to sale." F&R at 17; Dkt. 111 at 4. Judge Hernandez, however, expressly declined to adopt this finding. Hernandez Op. at 10. In any event, the court agrees with Regional that Deutsche Bank was the beneficiary at the time of the foreclosure sale.[6]

**E.    Wrongful Foreclosure**

Defendants ask that this court to reconsider rulings permitting Plaintiff to proceed on her claim for wrongful foreclosure. *See* Dkt. 108; Dkt. 111 at 9-12; Compl. ¶¶ 32-33; F&R at 21;

---

[6]    The full name of the beneficiary is "Deutsche Bank National Trust Company as Trustee under Pooling and Servicing Agreement Dated as of November 1, 2005 Morgan Stanley Home Equity Loan Trust 2005-4 Mortgage Pass Through Certificates, Series 2005-4." *See* Dkt. 40-2, Ex. Q.

Hernandez Op. at 11. Plaintiff's wrongful foreclosure claim does not explain the legal basis of that claim and may be construed as either a contract claim or a tort claim. Dkt. 108 at 3. Plaintiff also has not clarified the basis for her claim in her briefing to this court. In her response to Deutsche Bank's motion for summary judgment, Plaintiff states that "Plaintiff has an action in tort or contract for Defendants' intentional interference with her property rights." Dkt. 128 at 1-2. To the extent that Plaintiff's wrongful foreclosure claim is based on contract, it does not identify which contract provides the basis for the claim: the trust deed, the promissory note, or the Forbearance Agreement. To the extent, however, that the wrongful foreclosure claim is based in tort, the claim does not reveal on what tort theory it relies. Plaintiff proposes a variety of torts that may be applicable, including conversion, intentional infliction of emotional distress, and wrongful foreclosure. *See* Dkt. 125.

The court concludes that Plaintiff does not have a claim – in contract or in tort – for breach of the note and trust deed or for violation of the OTDA. As explained above, notwithstanding the Forbearance Agreement, Plaintiff was in default on the note and trust deed at the time of the foreclosure. Consequently, Plaintiff has no surviving claim for breach of the note or trust deed. Furthermore, also as explained above, Defendants properly appointed Regional as the successor trustee, and Regional provided proper notice of the foreclosure sale. Based on Judge Hernandez's Opinion and Order, Dkt. 90, and this court's findings described above, there are at present no remaining claims that Defendants violated the OTDA.[7] Plaintiff, therefore, has no claim for damages in tort based on duties established by that statute.[8]

---

[7] After oral argument on the instant motions, this court decided *James v. ReconTrust Co.*, --- F. Supp. 2d ---, 2012 WL 653871 (D. Or. 2012). In *James*, this court held that an entity such as MERS that is neither the original lender nor the lender's successor noteholder is not a beneficiary under the OTDA. As such, any assignment of the trust deed from the original beneficiary (the lender) to a successor, or from one successor to the next, must be recorded

Plaintiff has, however, raised a genuine dispute of material fact concerning whether she materially breached the Forbearance Agreement. If Plaintiff did not materially breach the forbearance agreement, it then would appear that Defendants have materially breached the Forbearance Agreement by foreclosing. Thus, Plaintiff may have a wrongful foreclosure claim based on this material breach of the Forbearance Agreement. If this is the substance of Plaintiff's claim, it lies in contract, not in tort. "Contract obligations are based on the manifested intention of the parties to a bargaining transaction, whereas tort obligations are imposed by law – apart from and independent of promises made and therefore apart from the manifested intention of the parties – to avoid injury to others." *Abraham v. T. Henry Construction, Inc.*, 350 Or. 29, 36 (2011) (internal quotation marks and citations omitted). HomEq's agreement to suspend foreclosure was not a duty imposed by law; it was a promise expressly made in the Forbearance Agreement: "The parties agree that for the term of this Agreement, foreclosure proceedings shall

---

pursuant to ORS § 86.735(1) before a trustee can conduct a non-judicial foreclosure. Notwithstanding this decision, no party has asked the court to reconsider Judge Hernandez's ruling finding that MERS was the beneficiary in this case. Dkt. 90 at 7.

[8] Oregon courts have not expressly recognized a tort of wrongful foreclosure based on violations of the OTDA. There is some Oregon case law suggesting a basis for such a tort. *See Harper v. Interstate Brewery Co.*, 168 Or. 26, 40 (1942) ("mortgagee in the exercise of a power of sale of real property owes a duty recognized both at law and in equity to act in good faith using all reasonable efforts to make the sale beneficial to the mortgagor by obtaining for the property the best price reasonably obtainable"); *Wright v. Associates Financial Services Co. of Oregon, Inc.*, 59 Or. App. 688, 695 (1982). In *Wright*, the Oregon court of Appeals found that "the trustee, not defendant as beneficiary of the trust deed, owed a fiduciary duty to" the grantors. *Id.* The legislature later amended the OTDA, however, to provide that a trustee does not owe a fiduciary duty to the grantor. ORS § 86.790(7). Because Plaintiff was in default on her note and trust deed and because Plaintiff has no remaining claims for violations of the OTDA, there is no basis on which to find that any of the Defendants have breached a duty established by Oregon's mortgage and trust deed laws. The court need not, therefore, decide whether Oregon law would permit a tort of wrongful foreclosure in the present case.

be held in abeyance so long as Borrower complies with all terms of this Agreement." Dkt. 40-2, Ex. L. Plaintiff's claim, therefore, lies only in contract.[9]

## F.    Damages

The final question concerns the measure of damages. Plaintiff suggests that she may recover emotional distress damages for breach of contract if such damages were a reasonably foreseeable result of a Defendant's material breach. Dkt. 128 at 4. Deutsche Bank and HomEq respond that "damages for emotional distress may not be awarded in a breach of contract case." Dkt. 108 at 4. To determine whether emotional distress damages are potentially available for breach of the Forbearance Agreement, the court must begin by determining whether to apply Oregon or California law. As noted above, the "threshold question in a choice-of-law problem is whether the laws of the different states actually conflict." *Spirit Partners, LP v. Stoel Rives LLP*, 212 Or. App. 295, 301 (2007).

Oregon and California law on the availability of emotional distress damages for breach of contract appear to be in conflict. Under Oregon law, "damages are not recoverable in contract for purely emotional distress." *Keltner v. Washington County*, 310 Or. 499, 510 (1990). This is the rule even when emotional security is the object of the contract. *See id.* at 510 (Unis, J., dissenting). A plaintiff may obtain emotional distress damages only if the breach of contract caused physical injury. *Id.* at 504, 506-07.

Under California law, however, a plaintiff may, in some instances, recover emotional distress damages absent a predicate physical injury. When "the express object of the contract is the mental and emotional well-being of one of the contracting parties, the breach of the contract

---

[9]    Given that Plaintiff's only viable breach of contract claim is based on the Forbearance Agreement, not on the note and trust deed, Plaintiff need not, as Deutsche Bank and HomEq argue, establish that she could cure her default on the note and trust deed. *See* Dkt. 132 at 4 ("Plaintiff cannot show that she could have cured the default").

may give rise to damages for mental suffering or emotional distress." *Erlich v. Menezes*, 21 Cal. 4th 543, 559 (1999).

Because there appears to be an actual conflict between Oregon and California law, the court then must determine which law to apply. The Forbearance Agreement provides that it "shall be governed by and construed in accordance with California law." Dkt. 40-2, Ex. L. Oregon's choice-of-law rules provide that the law chosen by the parties should govern their "contractual rights and duties." ORS § 15.350(1). The law does not, however, provide what law should govern the measure of damages. In the absence of a clear rule, the court may turn to the RESTATEMENT for guidance: "Although RESTATEMENT (SECOND) [OF] CONFLICT OF LAWS is not the law of Oregon, our courts refer to its provisions as a guide in resolving conflict of laws questions, especially in contract cases." *Manz v. Continental American Life Ins. Co.*, 117 Or. App. 78, 82 (1992). The RESTATEMENT provides that the measure of damages for breach of contract is determined by the law chosen by the parties. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 207 cmt. a (1971) ("questions[] involving the measure of recovery for a breach of contract are determined by the law chosen by the parties"). Thus, whether emotional distress damages are available for breach of the Forbearance Agreement must be determined by applying California law.

There is no unequivocal statement of California law deciding whether the express object of an agreement to forbear foreclosure proceedings is the mental and emotional well-being of the homeowner. Because the parties have not briefed this question, the court reserves for another day deciding whether emotional distress damages are available under California law for breach of the Forbearance Agreement.

/ / /

## CONCLUSION

Plaintiff was in default on the note and trust deed. Deutsche Bank properly appointed Regional the successor trustee. Deutsche Bank was the noteholder and beneficiary at the time of the foreclosure sale. Regional properly postponed and then rescheduled the foreclosure sale. Plaintiff has raised a triable issue of fact concerning whether Deutsche Bank and HomEq materially breached the Forbearance Agreement. Thus, in Plaintiff's first claim for relief, requesting declaratory relief, the following sub-paragraphs are dismissed: ¶ 20.2, ¶ 20.3, ¶ 20.7, ¶ 20.9. Plaintiff's second claim for relief, alleging breach of contract, is dismissed. Plaintiff's fifth claim for relief, alleging wrongful foreclosure, survives so far as it makes a claim for breach of contract based on the Forbearance Agreement. Judge Hernandez's rulings in his July 6, 2011, Opinion and Order, Dkt. 90, stand to the extent that they have not been altered by this Opinion and Order.

Accordingly, Defendants Deutsche Bank and HomEq's motion for summary judgment, Dkt. 107, is GRANTED IN PART AND DENIED IN PART. Regional's motion for reconsideration, Dkt. 110, is GRANTED and Regional's motion for summary judgment, Dkt. 110, is GRANTED. Plaintiff's motion for reconsideration and partial summary judgment, Dkt. 115, is GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.

Dated this 30th day of March, 2012.


/s/ Michael H. Simon
_____
Michael H. Simon
United States District Judge